1   *E-filed on*  9-7-06

2

3

4

5

6

7

8                 IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12   BYRON LEVINGSTON,                    No. C-02-01969 RMW

13            Petitioner,                 ORDER DENYING PETITION FOR A WRIT
                                          OF HABEAS CORPUS
         v.
14                                        **[Re Docket Nos. 1, 10, 15]**
     C.A. TERHUNE, Director of the Department of
15   Corrections,

16            Respondent.

17

18

19          Byron Levingston petitions for a writ of habeas corpus under 28 U.S.C. § 2254.  After

20   reviewing the papers, the court finds petitioner is not entitled to habeas corpus relief.  For the

21   reasons stated below, the petition for writ of habeas corpus is denied.

22                         **I.    BACKGROUND**

23   **A.    Factual Background**

24          The California Court of Appeal found the relevant facts as follows:  Petitioner shot and killed

25   Dr. Louis Barbe, Jr. ("Dr. Barbe") and his son Louis Barbe, III ("Louis"), and shot but did not kill

26   Dr. Barbe's tenant, Michael Bennett.  *People v. Levingston*, No. A085232, slip op. (Cal. Ct. App. Jan

27   23, 2001) ("App. Op.") at 2.  Petitioner admits that he shot all three men, but claims that he did so in

28   self-defense or imperfect self-defense.  *Id.*

Dr. Barbe lived with his 31-year-old son Louis in Oakland, California. *Id.* Dr. Barbe was a psychologist and Louis, due to brain damage suffered many years before, had a slightly reduced mental capacity. *Id.* Dr. Barbe was financially well-off and had two tenants at his house, Jeffrey Cunius and Bennett. *Id.* Bennett was in California evading drug charges in Nevada and met petitioner when the two were working as roofers on the same project. *Id.*

According to Bennett, he intended to obtain his own roofing projects and offered petitioner employment. *Id.* Petitioner states that Bennett wanted to buy three pounds of marijuana from him. *Id.* at 4. On June 27, 1993, petitioner and his girlfriend, Liz Bairos, went to Dr. Barbe's house to talk about jobs with Bennett. *Id.* at 2-3. Dr. Barbe mentioned that he was selling his house and petitioner asked for a tour. *Id.* at 4. Petitioner claims this meeting at Barbe's house occurred so that Bennett could sample petitioner's marijuana. *Id.* at 5. Bairos stated that she saw Dr. Barbe hand a gun to Bennett during this encounter. *Id.*

The next day, petitioner made a second visit to Dr. Barbe's house at about 8:00 p.m. *Id.* at 3. The prosecution claimed that Bennett told Dr. Barbe the visit was to allow petitioner to tour Barbe's house again. *Id.* Petitioner claims that the second visit was to deliver marijuana to Bennett. *Id.* at 5. Petitioner arrived at Dr. Barbe's house carrying a black gym bag containing marijuana. *Id.* at 3. According to the prosecution, petitioner, Dr. Barbe, Louis, and Bennett were all in the kitchen when the phone rang. *Id.* at 4. Dr. Barbe answered the phone in another room and the prosecution claimed that petitioner then pointed a gun at Bennett's head. *Id.* According to the prosecution, petitioner asked Bennett "Do you know what this is?" and ordered Bennett to summon Dr. Barbe into the kitchen. *Id.* Dr. Barbe entered the room and pleaded with petitioner not to use the firearm. *Id.* At that point, Bennett took a step away and petitioner fired a bullet that hit Bennett in the back of the head. *Id.* Bennett then heard a second shot and saw Dr. Barbe fall next to him. *Id.* Bennett heard two or three more shots before he called the police. *Id.*

According to petitioner, he arrived at Dr. Barbe's house to deliver the marijuana, which was in the black gym bag. *Id.* at 5. Bennett answered the door, smelling of alcohol. *Id.* Petitioner alleges that while Dr. Barbe was in another room, Bennett tried to take the marijuana without first giving petitioner the money. *Id.* The two became embroiled in an argument, and petitioner claims

1   that Bennett said that he was "fixing" to get his "shit," which petitioner believed was a reference to

2   the gun Bairos had seen Bennett with.  *Id.* at 5-6.  Bennett began to move away and petitioner

3   believed he was going to get a gun, so petitioner shot Bennett.  *Id.* at 6.  At that point, Dr. Barbe

4   retreated as if he was going to get a gun, so petitioner then shot Dr. Barbe.  *Id.*  Petitioner then

5   swung around to see Louis, who petitioner claimed to not know.  *Id.* at 5-6.  He saw Louis with a

6   Walkman and, mistaking it for a gun, shot Louis in the head.  *Id.* at 6.

7        Dr. Mindy Rosenberg, a psychologist, and Dr. George Woods, a forensic psychiatrist,

8   examined petitioner and determined that he was susceptible to overreaction because of his childhood

9   experiences with an extraordinarily violent and abusive stepfather.  Reporter's Transcript on Appeal

10  ("RT") at 1885-2410.  Petitioner's stepfather allegedly singled out petitioner and his stepbrother for

11  the most severe treatment, and beat them regularly with whatever objects he could find.  *Id.*  Dr.

12  Rosenberg testified that petitioner's condition is called "hypervigilance," which causes a "paranoid

13  perception of details without an accurate assessment of the overall context."  *Id.*

14       Petitioner states that the circumstances in which he and Bennett allegedly fought over the bag

15  of marijuana, combined with the alcohol on Bennett's breath and petitioner's belief that Bennett and

16  Dr. Barbe had a gun in the house, could lead to a hypervigilant interpretation of the situation.  *Id.* at

17  1598-1655.  Hypervigilance would allegedly decrease the clarity of petitioner's perception of the

18  situation.[1]  *Id.*

19  **B.    Procedural History**

20       On December 27, 1996, the Alameda County District Attorney's Office charged petitioner

21  with two counts of murder, one count of attempted murder, and one count of possession of a

22  concealable firearm by a felon.  Clerk's Transcript of Petitioner's Appeal ("CT") at 1828.  The

23  prosecutor made additional allegations of firearm use in connection with the first three counts, and

24  infliction of great bodily injury in connection with the attempted murder count.  The prosecution

25  also alleged three special circumstances: murder in the course of a robbery, murder while lying in

26

27  [1]  Petitioner presents an incident from his imprisonment at the Santa Rita jail as an example of his
    hypervigilance.  RT at 1598-1655.  A deputy inadvertently pressed a button opening petitioner's cell
    door.  *Id.*  When the door opened, petitioner "popped into the corridor, looking startled, and
28  assuming a boxing stance as though ready to fight."  *Id.*  Petitioner apologized when confronted by
    the deputy and returned to his cell.  *Id.*

1  wait, and multiple murder. *Id.* A jury trial began on March 2, 1998, and on May 13, 1998 the jury

2  returned a verdict of guilt for first-degree murder on one of the murder counts, attempted murder,

3  and felon in possession of a concealable firearm. *Id.* at 2665-2671. The jury returned a verdict of

4  guilt for murder in the second degree on the other murder count the next day. *Id.* at 2672-73. Both

5  the gun-use allegation and the special circumstance allegation for multiple murder were found true;

6  the special circumstance of murder in the course of a robbery was found untrue. App. Op. at 4. The

7  jury could not reach a verdict on the murder-while-lying-in-wait special circumstance allegation.

8  *Id.* at 2684-85. On November 19, 1998, petitioner was sentenced to a term of life imprisonment

9  without the possibility of parole. *Id.* at 2753-54.

10    Petitioner appealed from the trial court judgment, contending that his conviction must be

11  reversed because (1) there was prejudicial jury misconduct, (2) the court coerced the jury into

12  rendering a verdict, (3) the court instructed the jury incorrectly, (4) the prosecutor committed

13  misconduct when arguing the case to the jury, (5) the prosecutor committed misconduct when

14  questioning a witness at trial, (6) the court abused its discretion when it allowed the prosecutor to

15  introduce certain impeachment evidence at trial, and (7) the court erred when it allowed certain

16  hearsay evidence to be admitted at trial. App. Op. at 1. In an unpublished decision filed on January

17  23, 2001, the California Court of Appeal affirmed the trial court's judgment. *Id.* Petitioner then

18  filed a petition for review with the California Supreme Court, which was denied on April 26, 2001.

19  Resp.'s Exs. D, E.

20    Petitioner filed the present habeas petition on April 23, 2002.

21                          **II.   ANALYSIS**

22  **A.   Legal Standard**

23    This court will entertain a petition for writ of habeas corpus "[o]n behalf of a person in

24  custody pursuant to the judgment of a State court only on the ground that he is in custody in

25  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The

26  petition may not be granted with respect to any claim that was adjudicated on the merits in state

27  court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary

28  to, or involved an unreasonable application of, clearly established Federal law, as determined by the

1    Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

2    determination of the facts in light of the evidence presented in the State court proceeding." 28

3    U.S.C. § 2254(d).

4         "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

5    arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

6    state court decides a case differently than [the] Court has on a set of materially indistinguishable

7    facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,'

8    a federal habeas court may grant the writ if the state court identifies the correct governing legal

9    principle from [the] Court's decisions but unreasonably applies that principle to the facts of the

10   prisoner's case." *Id.*  "[A] federal habeas court may not issue the writ simply because the court

11   concludes in its independent judgment that the relevant state-court decision applied clearly

12   established federal law erroneously or incorrectly.  Rather, that application must also be

13   unreasonable." *Id.* at 411.

14        A federal court making the "unreasonable application" inquiry should ask whether the state

15   court's application of clearly established federal law was "objectively unreasonable." *Id.* at 410.

16   The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two

17   standards . . . are not the same.  The gloss of clear error fails to give proper deference to state courts

18   by conflating error (even clear error) with unreasonableness." *Lockyer v. Andrade*, 123 S. Ct. 1166,

19   1175 (2003).

20        A federal court may also grant the writ if it concludes that the state court's adjudication of the

21   claim "resulted in a decision that was based on an unreasonable determination of the facts in light of

22   the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The court must

23   presume correct any determination of a factual issue made by a state court unless the petitioner

24   rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. §

25   2254(e)(1).

26   **B.    Exhaustion**

27        The issues raised in the this petition have been raised in petitioner's direct appeal to the

28   California Court of Appeal and in his petition for review in the California Supreme Court.

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS—No. C-02-01969 RMW

1    Respondent's Ex. D.  However, in his petition for review to the California Supreme Court, petitioner

2    did not raise any federal constitutional claims.[2]  It is not sufficient to raise only the facts supporting

3    the claim in the state supreme court; rather, "the constitutional claim . . . inherent in those facts"

4    must be brought to the attention of the state court.  *See Picard*, 404 U.S. 202,  277 (1971).  State

5    courts must be alerted to the fact that prisoners are asserting claims under the United States

6    Constitution in order to be given the opportunity to correct alleged violations of federal rights.

7    *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

8           Nevertheless, this court may consider this petition on the merits, even if it is

9    unexhausted, pursuant to 28 U.S.C. § 2254(b)(2), which  states: "An application for a writ of

10   habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust

11   the remedies available in the courts of the State."

12   **C.      Substantive Analysis of Legal Claims**

13          Petitioner raises four claims under § 2254: (1) deprivation of his Sixth and Fourteenth

14   Amendment rights to an impartial jury trial because the jury foreperson explained to other jurors the

15   nature of the weapon used; (2) denial of his Sixth Amendment right to confrontation and his

16   Fourteenth Amendment right to conviction only upon competent evidence because jurors considered

17   his non-testimonial demeanor in court as evidence; (3) violation of his Sixth and Fourteenth

18   Amendment rights to an uncoerced decision from each jury member because the trial court asked the

19   jury to continue deliberation; and (4) denial of his Fourteenth Amendment right to proof beyond a

20   reasonable doubt on every essential element of the crime with which he is charged because the trial

21   court gave erroneous jury instructions.  As explained below, the California Court of Appeal's

22   decision affirming petitioner's conviction is neither contrary to nor an objectively unreasonable

23   application of established federal law.

24          **1.      Foreperson's Explanation of "Single Action"**

25          Petitioner alleges that he was deprived of his Sixth and Fourteenth Amendment rights to an

26   impartial jury trial because the jury foreperson explained to other jurors what a single-action

27   revolver was.  Pet. at 10.  Petitioner discarded the gun after committing the crime.  App. Op. at 7.

28
     ---
     [2]  There is also no evidence that Levingston filed a habeas petition in any California state court.

During trial, the owner of the gun, Alfred Bairos, identified the weapon from a catalogue photo. RT at 802-806. The catalogue listed the gun as an F.I.E. "Texas Ranger" and was introduced into evidence without objection. *Id*.; CT at 2745. During deliberations, the jury foreperson told other jurors that he was familiar with that model of handgun, and explained that the gun was single-action (meaning it had to be cocked by hand between firings). CT at 2708-18, 2737-38, 2741. The foreperson further told other jurors how this was relevant to the issue of premeditation. *Id.*

Petitioner claims that because of this information, the jury convicted him of premeditated first-degree murder of Louis. Pet. at 10. According to petitioner, the foreperson presented external information in the form of his own claim to expertise or specialized knowledge, which was improperly considered during deliberation. *Id.*

Petitioner's argument is not persuasive because the foreperson's explanation is not expert opinion and therefore not extrinsic evidence barred from consideration by jurors. The Sixth Amendment guarantees the criminally accused a fair trial by a panel of impartial jurors. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) (internal quotation marks omitted). The Sixth Amendment requires the jury verdict to be based on the evidence presented at trial. *See Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Jeffries v. Wood*, 114 F.3d 1484, 1490 (9th Cir. 1997) (*en banc*). However, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

Evidence not presented at trial is deemed "extrinsic." *See Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987). Jury exposure to extrinsic evidence deprives a defendant of the rights to confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment. *See Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir. 1995). The issue here is whether the foreperson's explanation of the meaning of "single-action" constituted expert opinion that should have been excluded as extrinsic evidence.

The Ninth Circuit has expressly stated that "[i]t is expected that jurors will bring their life experiences to bear on the facts of a case." *Hard v. Burlington N. R.R. Co.*, 870 F.2d 1454, 1462

1   (9th Cir. 1989) (denying new trial where one juror used personal knowledge of x-ray interpretation

2   to sway others, reasoning that jurors will bring life experience into the jury room). A juror's past

3   personal experiences is an appropriate part of the deliberation, because "one great advantage of

4   jurors over judges is their diversity of experiences." *Grotemeyer v. Hickman*, 393 F.3d 871, 879 (9th

5   Cir. 2004) (holding that foreperson's comments based on her experience as medical doctor that

6   defendant's mental disorders caused him to commit crime and that he would receive treatment as part

7   of sentence did not introduce extrinsic evidence). Juries have long been instructed, in state and

8   federal courts, to do precisely what the foreperson did in the present case. Often the jury instruction

9   contains an admonition something like:

> You are to base your verdict only on the evidence received in the case. In your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the exhibits. In other words, you are permitted to draw from the facts which you find have been proved such reasonable inferences as you feel are justified in the light of your experience and common sense.

KEVIN F. O'MALLEY *et. al*, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 12.03 para. 7 (5th ed. 2000). To the extent the foreperson based his explanation on his life experience, his explanation did not constitute misconduct that would violate petitioner's fair trial rights.

Petitioner argues that the term "single-action" is a term requiring explanation by an expert. Petitioner's Traverse ("Trav.") at 4, 5. This argument is misplaced. "Single-action" is a common term used to describe guns. *See* CT at 2747; MERRIAM-WEBSTER ONLINE, available at http://www.webster.com ("*adjective of a revolver* : that can be cocked only by manually retracting the hammer"). The meaning of this term would be commonly known to people familiar with firearms; petitioner acknowledges that the term is known to many laymen. Trav. at 5. The foreperson simply explained what "single-action" means, which can be done by any layperson and does not require teaching by a ballistics or firearm expert.

Petitioner further argues that the foreperson presented himself as an expert in explaining the term. *Id.* at 5-6. The foreperson's explanation was based on actual life experience because he had owned or operated a similar pistol and was familiar with it. CT at 2708-18. Petitioner admits that the foreperson never used the word "expert" to describe his knowledge. Trav. at 5-6. Nevertheless,

1  petitioner claims that to qualify as an expert, one "need[s] only to claim knowledge and experience,

2  and this knowledge and experience is invoked in support of an implied claim of credibility for the

3  information." *Id.* This argument leads to an absurd conclusion because, following standard jury

4  instructions, every juror's opinion would become an expert opinion if she draws inferences from

5  evidence using her own knowledge and experience.

6       Therefore, the California Court of Appeal's decision is not contrary to or an objectively

7  unreasonable application of Sixth Amendment jurisprudence.

8       **2.      Petitioner's Nontestimonial Demeanor**

9       Petitioner claims that he was denied his Sixth Amendment right to confrontation and his

10  Fourteenth Amendment right to conviction only upon competent evidence because the prosecutor

11  discussed and the jury considered petitioner's non-testimonial demeanor as evidence. Pet. at 11.

12  During petitioner's trial, a fire alarm went off. App. Op. at 14. One juror noted that petitioner

13  appeared calm during the fire alarm, and pointed out this was not consistent with his claim of

14  hypervigilance. CT at 2714. The jurors discussed this information before and during deliberations.

15  *Id.* Additionally, the prosecutor, in rebutting petitioner's claim of hypervigilance, said to the jury

16  during closing arguments, "You had evidence right here in front of you when the fire alarm went

17  off." App. Op. at 15. Defense counsel objected and sought an admonition. *Id.* During sidebar, the

18  court said it was inclined to sustain the objection, but it declined to make a definitive ruling so

19  parties could research the issue and discuss it later. *Id.* The court did not address the issue again,

20  and the prosecutor did not further discuss the fire alarm during his closing. *Id.* Petitioner argues

21  that this evidence was improperly introduced because he did not have a chance to confront it. *Id.*

22       **i.      Jury Misconduct**

23       Petitioner claims that his nontestimonial demeanor in court cannot be considered by the jury,

24  and that the proper way for the jury to consider such demeanor is to have a percipient witness who

25  can be cross-examined and confronted. In support of this argument, petitioner cites *Coy v. Iowa*,

26  487 U.S. 1012 (1988) (holding that defendant is entitled to face-to-face confrontation with testifying

27  witness). Petitioner's argument is inconsistent with federal case law.

28

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS—No. C-02-01969 RMW

It is well-settled that a defendant's courtroom demeanor is evidence.  In *Russell v. United States*, 288 F.2d 520 (9th Cir. 1961), the Ninth Circuit observed that a trial court is in a much better position than an appellate court to determine whether the evidence in a particular case warrants a new trial.  The court noted that "the trial judge can see in the conduct and demeanor of one who testifies (or even in the conduct and demeanor of defendants who never take the witness stand, as the defendants did not here) a thousand and one matters impossible for a reviewing court to glean from a printed page." *Id*. at 522.  Likewise, in *Reagan v. United States*, 157 U.S. 301 (1895), the Supreme Court quoted with approval instructions that specifically advised a jury to consider the defendant's "demeanor and conduct upon the witness stand and *during the trial*." *Id.* at 308 (emphasis added).

Petitioner testified as to his alleged hypervigilance, and his demeanor during trial therefore became relevant evidence pertaining to his credibility.  It is proper for the triers of fact to consider his demeanor in court when considering his credibility.  The Supreme Court in *Coy* held that a defendant has a right of confrontation when there is a testifying witness, which is not the case here. 487 U.S. at 1016-19.  There is no witness to confront in the present case.  It would be absurd to require the prosecutor to produce a percipient witness to testify on petitioner's demeanor, when the jurors could observe it directly themselves.

Regarding the jurors' comments, the state court noted that the jurors committed misconduct by discussing the petitioner's demeanor before deliberations began.  App. Op. at 13-15.  Premature deliberations, however, are not as serious as other jury misconduct such as private communication, outside contact, or tampering.  *Davis v. Woodford*, 384 F.3d 628, 653 (9th Cir. 2004).  "What is crucial is not that jurors keep silent with each other about the case but that each juror keep an open mind until the case has been submitted to the jury." *Id.* at 653 (internal quotation marks omitted); *see id.* at 651-53 (no error where juror submitted note to judge before deliberations saying "we" wanted to know whether defendant would remain in prison if jury returned noncapital sentence). The state court's rejection of petitioner's jury misconduct claim was not contrary to or an unreasonable application of federal Sixth Amendment law.

## ii.   Prosecutorial Misconduct

Prosecutorial misconduct is cognizable in a federal habeas corpus case.  The appropriate standard of review, though, is a narrow check for due process violations, not a broad exercise of supervisory power.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *See id.*; *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  Under *Darden*, the first issue is whether the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness.  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided by "examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation and internal quotation marks omitted).

A prosecutor may not comment on a defendant's courtroom behavior.  *See United States v. Schuler*, 813 F.2d 978, 981 (9th Cir. 1987) (references to inappropriate laughter of non-testifying defendant error requiring reversal as violation of due process clause of Fifth Amendment; court noted absence of curative instruction).  Repeated references to trial court's pretrial rulings regarding evidence offered at trial is also improper absent of court's curative instructions.  *United States v. Younger*, 398 F.3d 1179,1192 (9th Cir. 2005) (holding "swift corrective action" on part of court and curative instruction rendered prosecutor's impropriety harmless).

Petitioner claims that the prosecutor engaged in misconduct by mentioning petitioner's reaction to the fire alarm in closing arguments.  The standard for prosecutorial misconduct requires that the comment "infect[] the trial with unfairness" to the point that it deprived the petitioner of due process.  *Johnson*, 63 F.3d at 929.  Here, the prosecutor mentioned petitioner's courtroom demeanor and questioned the validity of petitioner's claim of hypervigilance.  App. Op. at 13-15.  Petitioner promptly raised an objection.  *Id.*  However, petitioner never obtained a definitive ruling from the court on the objection.  *Id.*  The California Court of Appeal found that petitioner had waived the issue for purposes of appeal.  *See People v. Staver*, 115 Cal. App. 2d 711, 724 (1953) ("When the

1    court reserves a ruling upon an objection, the defendant must later secure a ruling thereon or he will

2    be presumed to have waived a ruling.")

3         Even if petitioner had not waived the issue, the prosecutor's statement cannot be

4    characterized as infecting the trial with unfairness.  In *Schuler*, the court found misconduct in

5    violation of a non-testifying petitioner's due process right.  813 F.2d at 981.  In contrast, here,

6    petitioner testified in his trial, thereby subjecting his credibility to the same scrutiny as any other

7    witness.  Additionally, the prosecutor only mentioned the behavior once during his closing

8    argument.  The defendant promptly raised an objection, and the prosecutor did not discuss the

9    subject further.  Given the other evidence against petitioner, it is unlikely that the prosecutor's

10   statement changed the outcome of the trial.  *United States v. Yarbrough*, 852 F.2d 1522, 1539 (9th

11   Cir. 1988) ("Where the evidence is so strong against [defendant], and the prosecutor's 'misconduct'

12   relatively innocuous, it cannot be said that [defendant's] rights were substantially affected.").  Hence,

13   the prosecutor's brief mention of petitioner's demeanor did not result in a fundamentally unfair

14   verdict.  The petitioner is not entitled to habeas relief because of the prosecutor's mention of his

15   courtroom behavior.

16        **3.    Jury Coercion**

17        Petitioner asserts that his Sixth and Fourteenth Amendment rights to an uncoerced decision

18   from each jury member were violated.  The jury deliberations lasted fifteen days, from April 24 to

19   May 14, 1998.  CT at 2507-2684.  On the tenth day, the jurors stated they were ready to report

20   deadlocks on counts one, two, and three.  *Id.* at 2660.  After polling the jurors, the trial judge sent

21   them back for further deliberation.  *Id.* at 2661.  On the fourteenth day, the jurors returned verdict on

22   all counts except on the murder of Dr. Barbe and on the lying-in-wait special circumstance.  *Id*. at

23   2668-73.  Two jurors indicated that further instruction would help.  *Id.* at 2665-66.  On day fifteen,

24   after the court asked the jury to formulate a question, the jury submitted a note asking for further

25   instruction on the lying-in-wait special circumstance.  The court then declined to give further

26   instruction, but rather told the jurors to refer to the original instruction.  *Id.* at 2684.  The jury

27   returned a verdict of second-degree murder for Dr. Barbe's killing at the end of that day.  *Id.*

28

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS—No. C-02-01969 RMW

1    Petitioner argues that the court's refusal to accept an impasse or to give further instructions

2    constituted jury coercion. Pet. at 12-13.

3            This argument is unpersuasive. Whether a judge has coerced a jury's verdict is a mixed

4    question of law and fact, and should be considered under the totality of circumstances. *Jiminez v.*

5    *Myers*, 40 F.3d 976, 979 (9th Cir. 1993). When a jury appears to be deadlocked, the trial court has

6    discretion whether to send the jury back for further deliberation or to declare a mistrial, because the

7    trial judge is in the best position to determine the likelihood of a verdict. *See United States v.*

8    *Sommerstedt*, 752 F.2d 1494, 1497-98 (9th Cir. 1985), *amended by* 760 F.2d 999 (9th Cir. 1985).

9    Federal courts deciding whether the jury was improperly coerced must consider the trial court's

10   instruction "in its context and under all circumstances," *Lowenfield v. Phelps*, 48 U.S. 231, 237

11   (1988) (internal quotation marks omitted); *see Jiminez*, 40 F.3d at 980; *Locks v. Sumner*, 703 F.2d

12   403, 406-07 (9th Cir. 1983). Whether the comments and conduct of a trial judge surrounding an

13   *Allen* charge[3] violated a criminal defendant's due process rights ultimately turns on whether "the trial

14   judge's inquiry would be likely to coerce certain jurors into relinquishing their views in favor of

15   reaching a unanimous decision." *Jiminez*, 40 F.3d at 979. In assessing the coerciveness of a

16   supplemental instruction, a court must look to "(1) the form of the instruction; (2) the period of

17   deliberation following the *Allen* charge; (3) the total time of jury deliberations; and (4) the indicia of

18   coerciveness or pressure upon the jury." *United States v. Foster*, 711 F.2d 871, 884 (9th Cir. 1983).

19           The facts of the present case closely resemble those in *Rodriguez v. Marshall*, 125 F.3d 739

20   (9th Cir. 1997), where the Ninth Circuit found no jury coercion. In *Rodriguez*, the jury met for a

21   total of fifteen court days, during which the jury sent five separate notes on four different days

22   indicating a deadlock. *Id.* at 742. The presiding judge refused five defense motions for a mistrial,

23   commented on the evidence which the jury had requested while giving a supplemental instruction,

24   and after the jury repeatedly declared a deadlock, learned that the jury's split had remained at 11-1

25   for each of the five ballots taken. *Id.*

26

27   _____

28   [3] An *Allen* charge is traditionally understood as an instruction to work towards unanimity by
     considering the views of others when a jury has reached an impasse in its deliberations. *See United States v. Wills*, 88 F.3d 704, 716 (9th Cir. 1996).

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS—No. C-02-01969 RMW

1   In the present case, the jury also met for fifteen court days.  The jury only reported deadlocks

2   twice (each time with a 11-1 split).  App. Op. at 16-17.  The presiding judge conducted a poll after

3   each reported deadlock, and on both occasions at least two jurors indicated that further deliberation

4   would be helpful.  *Id.*  The trial judge never explicitly demanded a verdict from the jury, and the

5   court's *Allen* charges were at least partially in response to some jurors' desire for further deliberation.

6   These circumstances, when considered in their entirety, do not amount to coercion.

7   Petitioner argues that by first eliciting a question from the jury and then refusing to provide

8   further instructions, the court effectively communicated to the jury that an impasse was not

9   acceptable and that the jurors would have to return a verdict.  Pet. at 13.  It is well-settled that the

10  trial judge has substantial latitude in tailoring jury instructions.  *United States v. Garcia-Rodriguez*,

11  558 F.2d 956, 965-66 (9th Cir. 1977).  The trial judge's refusal to give further instructions, either

12  upon motions by parties or requests by the jury, is rarely a sufficient basis for finding jury coercion.

13  *See United States v. Cuozzo*, 962 F.2d 945 (9th Cir. 1992) (finding trial judge's refusal to give

14  further instructions on government's burden of proof with *Allen* charge not coercive).  Here, the trial

15  judge's elicitation of a question was in response to two juror's indications that further instructions

16  might be helpful.  App. Op. at 17.  However, a question from the jury does not obligate the judge to

17  give further instructions, so long as the instructions as a whole fairly apprised the jury of the

18  requisite elements of each crime.  *See Garcia-Rodriguez*, 558 F.2d at 965-66 (instructions must

19  "fairly and adequately" explain charges).  The petitioner never challenged the sufficiency of the

20  instructions as originally given, therefore, petitioner cannot now complain that the judge was

21  obligated to answer the jury's question and give further instruction.

22  Petitioner argues that the court's refusal to give further instructions "effectively

23  communicated to the jurors that an impasse would not be accepted and that the jurors would have to

24  return a verdict."  Pet. at 13.  This argument is unpersuasive.  The judge overseeing deliberations

25  actually apologized for not being able to give further instructions and explained that this decision

26

27

28

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS—No. C-02-01969 RMW

1   was based on a discussion with the presiding trial judge.[4]  App. Op. at 17.  Moreover, the trial judge

2   explicitly instructed the jury to "return to the original instructions and then inform the court if you

3   *are or are not* able to arrive at a verdict."  App. Op. at 17 (emphasis added).  There is nothing in the

4   trial judge's language indicating that an impasse was unacceptable and the jury had to return a

5   verdict.

6       Petitioner also argues that the present case is distinguishable from *Rodriguez* in that after the

7   final instruction, the jurors did not ask for re-reading of testimony or further instructions on the law,

8   and the amount of time they took to deliberate was "negligible."  Trav. at 11-12.  This argument is

9   inconsistent with existing case law.  If the jury had immediately returned a verdict after the *Allen*

10  charge, a suspicion of coercion might be raised.  *United States v. Bohnham*, 772 F.2d 1449, 1451

11  (9th Cir. 1985).  The jury here, however, deliberated for a day before returning a verdict.  Pet. at 13.

12  The Ninth Circuit has found *Allen* charges followed by much shorter deliberations to be non-

13  coercive.  *See United States v. John*, 39 F.3d 1139 (9th Cir. 1994) (jury deliberation of two and

14  one-half hours after *Allen* charge was sufficient); *Bohnham,* 772 F.2d at 1451 (jury deliberation of

15  one and one-half hours between *Allen* charge and verdict did not demonstrate coercion).  The total

16  deliberation time of one day after the *Allen* charge in this case does not indicate that the jury was

17  coerced into returning its verdict.  Therefore, the state appellate court's resolution of this issue

18  comports with applicable federal law.

19          **4.    Improper Jury Instruction**

20      Petitioner claims that he was denied his Fourteenth Amendment right to proof beyond a

21  reasonable doubt on every essential element of the crime because of the court's erroneous instruction

22  on voluntary manslaughter.  Pet. at 14-15.  Evidence in the case went to the issue of actual but

23  unreasonable self-defense, which petitioner claims caused the jury to return an improper verdict of

24  first-degree murder.  *Id.* at 14.  Pursuant to CALJIC No. 5.17, the trial court instructed the jury that

25  imperfect self-defense could not be applied nor malice aforethought negated if petitioner "by his

26

27  _____

28  [4]  Judge Carl W. Morris presided at the trial.  Judge Vernon Nakahara, substituting for Judge Morris, oversaw the jury deliberation on May 11, 1998.  CT at 2663.  Judge Joseph Jay, substituting for Judge Morris, oversaw the jury deliberation from May 13, 1998 to May 14, 1998.  *Id.* at 2665, 2684.

1   unlawful or wrongful conduct created the circumstances which legally justified his adversary's use

2   of force or attack."  App. Op. at 19-20.  Petitioner claims that this instruction misstates the state law

3   from *In re Christian S*., 7 Cal. 4th 768 (1994), and negates the principle of imperfect self-defense.

4   Pet. at 14; Trav. at 12.

5       A challenge to a jury instruction solely as an error under state law does not state a claim

6   cognizable in federal habeas corpus proceedings.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)

7   ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state

8   law questions.").  It is undisputed that "[a] state court has the last word on the interpretation of state

9   law."  *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002).  The federal court hearing a habeas

10  claim is "bound by a state court's construction of its own penal statues."  *Aponte v. Gomez*, 993 F.2d

11  705, 707 (9th Cir. 1993).

12      To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the

13  challenged instruction by itself so infected the entire trial that the resulting conviction violates

14  petitioner's due process rights.  *See Estelle*, 502 U.S. at 72; *see also Cupp v. Naughten*, 414 U.S.

15  141, 146 (1973) ("[I]t must be established not merely that the instruction is undesirable, erroneous or

16  even 'universally condemned,' but that it violated some [constitutional] right.").  A state violates a

17  criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant

18  of a state-law entitlement.  *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980).

19      In the present case, the state court did not arbitrarily deprive petitioner's due process rights in

20  giving the jury instruction.  A closer look at California law supports the court's conclusion on the

21  issue of imperfect self-defense.  The state appellate court ruled that the pertinent portion of CALJIC

22  No. 5.17 states the law correctly.  App. Op. at 19-21.  The Ninth Circuit noted this exception to the

23  self-defense doctrine in *Riley v. Payne*, 352 F.3d 1313 (9th Cir. 2003), where the court upheld a jury

24  instruction that "if you find beyond a reasonable doubt that the defendant was the aggressor, and that

25  defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as

26  a defense."  *Id.* at 1321 n.7 (holding that defendant was first aggressor and self-defense could not be

27  found by jury).

28

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS—No. C-02-01969 RMW
16

1    Nevertheless, petitioner argues that if a defendant actually believes his opponent is the

2  aggressor, such belief is a mistake of fact and he is entitled to the defense of imperfect self-defense

3  even when the defendant objectively is the aggressor.  Trav. at 13.  This is an incorrect

4  understanding of *In re Christian S*.  What the defendant subjectively believes has no bearing on the

5  exception to the imperfect self-defense doctrine:

6        It is well established that the ordinary self-defense doctrine . . .
         may not be invoked by a defendant who, through his own wrongful
7        conduct . . . has created circumstances under which his adversary's attack
         or pursuit is legally justified.  It follows, a fortiori, that the imperfect self-
8        defense doctrine cannot be invoked in such circumstances.

9  7 Cal. 4th at 773 n.1.  There is nothing in this language about a defendant's subjective belief.  The

10  exception to the imperfect self-defense doctrine is based on an objective standard.

11    In summary, both the state trial court and the appellate court correctly interpreted the law on

12  imperfect self-defense and did not arbitrarily deprive petitioner's due process rights.  Under the

13  *Estelle* doctrine, this court must defer to the state-court decision and find that petitioner failed to

14  state a claim for which relief is available in this forum.

15                                **III.   ORDER**

16    The court finds that petitioner has failed to show any violation of his federal constitutional

17  rights in the underlying state criminal proceedings.  Accordingly, the petition for a writ of habeas

18  corpus is denied.

19

20  DATED:        9/7/06                          *Ronald M Whyte*

21                                              RONALD M. WHYTE
                                                United States District Judge
22

23

24

25

26

27

28

1    **A copy of this order was mailed on _____ to:**

2    **Counsel for Petitioner:**

3    Mark D. Greenberg
     PBM No. 429
4    484 Lake Park Avenue
     Oakland, CA 94610
5
     **Counsel for Respondent:**
6
     Juliet B. Haley
7    California Attorney General's Office
     455 Golden Gate Avenue
8    Suite 11000
     San Francisco, CA 94102-7004
9

10   Counsel are responsible for distributing copies of this order to co-counsel, as necessary.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS—No. C-02-01969 RMW